24.     An independent check by Reed Elsevier on January 12, 2005 confirmed that all overt uses of the uniquely stylized graphics of the VARIETY Marks appeared to have ceased.

25.     In mid December 2009, Reed became aware that KFR and Vandals were again using at their websites the uniquely styled graphics of the VARIETY Marks in violation of the terms of the Judgment and breaching the Settlement Agreements.

### SETTLEMENT AGREEMENTS AND JUDGMENT

26.     The KFR/Vandals Settlement Agreement identified, in pertinent part, the following obligations for KFR and Vandals:

4.2     Vandals acknowledge and represent that they have provided Reed Elsevier with accurate and complete information relating to their production, distribution and sale of products and services under the Subject Marks - those Vandals marks encompassing the graphics for Reed Elsevier's VARIETY mark, the graphics for Reed Elsevier's Flying V logo mark and/or the graphical presentation of the Reed Elsevier DAILY VARIETY (Stylized) mark (hereafter these graphical logos of Reed Elsevier are referred to as the "Images at Issue").

4.3     Vandals represent that they have ceased to distribute any products or promotional materials within their control which carry the Subject Marks and further agree that they will not in the future use, promote, display or distribute, or cause others to use, promote, display or distribute any products or promotional materials which incorporate the Images at Issue. Reed Elsevier acknowledges that Vandals do not have control over products and promotional materials already in the stream of commerce as of the date of this Agreement or which are created by third parties, such as concert promoters unrelated to Defendants, without the assistance or knowledge of Vandals. (See analogous representation at Freese Settlement Agreement at ¶ 4.3)

4.4     Vandals agree immediately to amend or change, if they have not already done so, any and all web sites and other digital or electronic images, and the like within their control to cease use of the Subject Marks and Vandals agree not to use the Subject Marks or the Images at Issue in the future in any such media, or in any other media.

4.5     Vandals agree immediately to have the artwork and graphics changed for their Hollywood Potato Chip CD/album to artwork and graphics not using the Subject Marks or the Images at Issue, or any artwork or graphics which are confusingly similar to the Images at Issue.

Notwithstanding the foregoing, products in the stream of commerce, meaning, for purposes of this Agreement, products beyond the control of the Defendants, shall be handled pursuant to Paragraph 4.8.

4.6     Vandals agree that all products, collateral merchandise and other materials (including but not limited to albums, CDs, posters, hats, other clothing, pins, badges and publicity materials) within their control which carry any of the Subject Marks, and which cannot have the Subject Marks removed or eliminated from such products or materials, will be immediately destroyed and that Vandals will provide Reed Elsevier with an affidavit within five (5) business days of the effective date of this Agreement confirming that such products and materials have been destroyed. (See analogous representation at Freese Settlement Agreement at ¶ 4.5)

4.7     Vandals agree to cooperate with Reed Elsevier, when and where requested by Reed Elsevier, to take reasonable steps to cause any third party uses of references to Vandals or to Vandals' products which incorporate the Subject Marks or the Images at Issue to be stopped or appropriately altered, such efforts to include but not necessarily be limited to requesting web site owners and operators to cease displaying the Subject Marks or Images at Issue and providing them with replacement creative material. The communication to be sent by Vandals to such web site owners and operators will be subject to review and approval by Reed Elsevier. (See analogous representation at Freese Settlement Agreement at ¶ 4.6)

4.8     Vandals agree to have appropriately sized labels/stickers prepared carrying the designation "The Vandals" in graphics not including the Images at Issue, or graphics which are confusingly similar to the Images at Issue, which Vandals will then send to the distributors of the Hollywood Potato Chip album/CD with a request that the stickers be affixed to all Hollywood Potato Chip CD discs and CD jewel cases or albums in a manner to obscure the appearance of the Subject Marks. The letter to be sent by Vandals to its distributors will be subject to review and approval by Reed Elsevier. Reed Elsevier agrees that Vandals shall not be considered in violation of this Agreement or of the Consent Judgment and Permanent Injunction if distributors do not comply with the request, so long as Vandals have done nothing to encourage or abet non-cooperation by the distributors.

4.9     Vandals agree that they will make no future use, in any unprotected commercial context, of the Subject Marks or the Images at Issue, nor of any simulation of the VARIETY Marks, or of any of the other Reed Elsevier marks as identified in Exhibit C. (See analogous representation at Freese Settlement Agreement at ¶ 4.7)

4.14     Vandals agree that if there is ever a breach of this Agreement alleged by Reed Elsevier, which breach cannot be promptly remedied to

the satisfaction of Reed Elsevier through negotiation with Vandals, either a state or federal court sitting in Wilmington, Delaware will have both subject matter and personal jurisdiction over the breach issue, and Vandals specifically agree to consent to personal jurisdiction before such courts if Reed Elsevier elects to proceed in such courts. The cure period will be thirty (30) days from written notice of the breach. Reed Elsevier, at its sole discretion, may also opt to proceed before a court in the Central District of California, or in any other court where appropriate subject matter and personal jurisdiction over Vandals can be shown. (See analogous representation at Freese Settlement Agreement at ¶ 4.11)

*\*\**

4.15    Vandals agree that they will not assist or encourage another entity or individual to take any action which would be precluded under this Agreement for Vandals acting directly.

*\*\**

5.2    In the event Vandals breach this Agreement, Reed Elsevier shall be entitled, separate and apart from its rights under the Consent Judgment and Permanent Injunction to be entered by the Court, including liquidated damages in the amount of $50,000, to preliminary and permanent injunctive relief and an award of its attorney fees incurred in enforcing this Agreement. (See separate provision at Freese Agreement at ¶6.2 (*"In the event Freese breaches this Agreement, Reed Elsevier shall be entitled, separate and apart from any other rights available to it, liquidated damages in the amount of $50,000, to preliminary and permanent injunctive relief and an award of its attorney fees incurred in enforcing this Agreement."*)

27.    The Judgment entered by the United States District Court for the Central

Division of California contained the following relevant provisions:

14.    Defendants represent that they do not have within their control any "Gone with the Wind Sampler" albums/CDs, nor any other products or materials carrying the VARIETY mark as depicted on that album/ CD cover.

17.    Defendants ... are hereby enjoined from using and/or offering for sale and/or promoting for sale on or after November 15, 2004, products or materials bearing any of the Plaintiffs' VARIETY Marks or any of the graphics used for the VARIETY Marks as reflected above in Paragraph 7, or using any other colorable imitation or other designation confusingly similar to Plaintiffs' VARIETY Marks or the graphics used for the VARIETY Marks, either alone or in combination with any other words, names or symbols, as marks, trade names, style designations or otherwise, on or in connection, or in relation to the sale or offer for sale of any

products or services. This injunction does not extend to distributors and promoters of Defendants' albums/CDs with respect to the future sales of any albums/CDs bearing the VARIETY Marks and any of the graphics for the VARIETY Marks if those albums/CDs were in the possession of such distributors and promoters as of November 15, 2004 and if Defendants no longer have control over such albums/CDs.

18.    Defendants are hereby ordered to alter appropriately or destroy any and all products and materials within their control and all displays, labels, signs, circulars, packages, wrappers, receptacles, advertisements, sales aids, and other matter in their possession or under their control as of November 1, 2004, which bear or depict the mark VARIETY, or any portion of the VARIETY mark, or which bear or depict "The Vandals" where the graphics of the VARIETY Marks have been used.

19.    Defendants are hereby ordered to execute and deliver up to the Plaintiffs' counsel an affidavit acknowledging that Defendants have complied with this Consent Judgment and Permanent Injunction within thirty (30) days of the entry of this Consent Judgment and Permanent Injunction.

20.    Defendants agree that if they are found to be in violation of the terms of this Consent Judgment and Permanent Injunction, they will be liable for liquidated damages to Plaintiffs, in the amount of fifty-thousand dollars ($50,000). This liability will be separate and apart from, and in addition to any other damages which Plaintiffs may be able to establish.

## POST-JUDGMENT AND SETTLEMENT ACTIVITIES OF KFR AND VANDALS

28.    At least as early as December 14, 2009, and for an unknown period of time beforehand, the KFR website, at

www.kungfurecords.com/KungFuRecords/vandalspage.html was actively promoting the sale of "The Vandals" "Hollywood Potato Chip" album/CD using an image of the album cover containing graphics enjoined under the Judgment and precluded by Settlement Agreements.

29.    At least as early as December 14, 2009, and for an unknown period of time beforehand, the KFR website at the "vandalspage" noted above was actively promoting the sale of the "Gone With The Wind" of Punk Rock Samplers album/CD using an image of the album cover containing graphics enjoined under the Judgment and

precluded by Settlement Agreements. A copy of the KFR website at the "vandalspage" noted above as it appeared on January 5, 2010 is attached as Exhibit E.

30.     Starting at least as early as December 14, 2009, and for an unknown period of time beforehand, the KFR website at the "vandalspage" noted above had a direct link to the website of the online music retailer Interpunk, Inc., offering for sale and selling to consumers the "The Vandals" "Hollywood Potato Chip" album/CD, using an image of the album cover containing the graphics enjoined under the Judgment and precluded by the Settlement Agreements. A copy of the Interpunk Inc. page linked from the KFR website at the "vandalspage" as it appeared on January 5, 2010 is attached as Exhibit F.

31.     Starting at least as early as December 14, 2009, and for an unknown period of time beforehand, the KFR website at the "vandalspage" noted above, had a direct link from the image of the album cover for "Gone With The Wind" of Punk Rock Samplers to an Amazon.com page offering the sale of and selling to consumers the "Gone with the Wind" album/CD, using an image of the album cover containing graphics enjoined under the Judgment and precluded by the Settlement Agreements. A copy of the Amazon.com. page linked from the KFR website at the "vandalspage" as it appeared on January 5, 2010 is attached as Exhibit G.

32.     Upon information and belief, the kungfurecords.com web site is controlled and operated by KFR and/or Vandals.

33.     Starting at least as early as December 14, 2009, and for an unknown period of time beforehand, the website of "The Vandals," at www.vandals.com included a direct link to the websites of online retailers such as Bull Moose and Interpunk, Inc. offering for sale and selling the "The Vandals" "Hollywood Potato Chip" album/CD using an image of the album cover containing the original graphics enjoined under the Judgment and precluded by the Settlement Agreements. Copies of the BullMoose and

Interpunk Inc. pages linked from the vandals.com site as they appeared on January 4, 2010 are attached as Exhibit H.

34.     Upon information and belief, the vandals.com web site is controlled and operated by KFR and/or Vandals.

35.     Starting at least as early as February 2010 and for an unknown period of time beforehand, the MySpace page for "The Vandals" (http://www.myspace.com/thevandals), accessible through www.joeescalante.com, www.kungfurecords.com and www.vandals.com web sites and the My Space page for KFR (http://www.myspace.com/kungfurecords) were, in commerce, promoting, offering for sale and selling through the inner "pop out player" window located on the site "The Vandals" "Hollywood Potato Chip" album/CD using an image of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements. A copy of the MySpace page for "The Vandals" as it appeared on February 5, 2010 is attached as Exhibit I.

36.     Upon information and belief, the MySpace page for "The Vandals" (http://www.myspace.com/thevandals), accessible through www.joeescalante.com, www.kungfurecords.com and www.vandals.com web sites and the My Space page for KFR (http://www.myspace.com/kungfurecords) is controlled and operated by KFR and/or Vandals.

37.     Starting at least as early as February 2009 and for an unknown period of time beforehand, on information and belief KFR and Vandals have been posting songs on YouTube from the "The Vandals" "Hollywood Potato Chip" album/CD displaying an image of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements. A copy of the You Tube page for "How They Getcha" track off the "Hollywood Potato Chip" album/CD as it appeared on March 17, 2010, is attached as Exhibit J.

38.     Starting at least as early as February 2009 and for an unknown period of time beforehand, MP3 downloads of songs from "The Vandals" "Hollywood Potato Chip" album/CD have been offered for download via online music retailers such as iTunes and Amazon.com using an image of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements. Copies of the iTunes and Amazon.com pages for "The Vandals" "Hollywood Potato Chip" album as they appeared on March 17, 2010, are attached as Exhibit K.

39.     Upon information and belief, as of the date of this Complaint, KFR and the Vandals had not sent replacement graphics to online music retailers such as iTunes and Amazon.com for the "The Vandals" "Hollywood Potato Chip" album/CD who continue to display, in association with the offered MP3 downloads, images of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements.

40.     Upon information and belief, KFR and Vandals have provided and/or facilitated the provision to, and as of the date of this Complaint, are continuing to provide and/or facilitate the provision to particular distributors albums/CDs images of album covers containing graphics which incorporate the enjoined graphics and marks associated with Reed Elsevier's VARIETY Marks.

41.     Upon information and belief, KFR and Vandals, as of the date of this Complaint, have failed to destroy or fully destroy albums/CDs or electronic copies of images of the album cover which incorporate the enjoined graphics and marks associated with Reed Elsevier's VARIETY Marks.

## REED ELSEVIER'S DEMAND

42.     On February 5, 2010, Reed Elsevier sent a demand letter to KFR and Vandals informing Defendants of Reed Elsevier's discovery and knowledge of the activities in breach of the Settlement Agreements and in violation of the Judgment, putting KFR and Vandals on written notice that Reed Elsevier considered these activities

breaches of the Settlement Agreements and violations of the Judgment and setting out the required steps for a full cure of the identified violations. including payment of $50,000 as the liquidated damages covered by the Judgment and the Settlement Agreements.

43.     Sometime after February 5, 2010, KFR and/or Vandals replaced or eliminated the image of the album cover for "The Vandals" "Hollywood Potato Chip" album/CD and the image of the album cover "Gone With The Wind" of Punk Rock Samplers album/CD displayed at the KFR website through the "vandalspage" with revised images or material that did not include the enjoined graphics under the Judgment and Settlement Agreements.

44.     Sometime after February 5, 2010, KFR and/or Vandals replaced the image for "The Vandals" "Hollywood Potato Chip" album/CD displayed at "The Vandals" website (www.vandals.com) with a revised image that did not include the enjoined graphics under the Judgment and Settlement Agreements.

45.     Sometime after February 5, 2010, KFR and/or Vandals caused to be replaced the image for the "Hollywood Potato Chip" album/CD accessible through direct link to Interpunk with a revised image that did not include the enjoined graphics under the Judgment and Settlement Agreements.

46.     To date, however, KFR and Vandals have failed to cure the use of the original graphics enjoined under the Judgment and Settlement Agreements at sites under their control such as the MySpace and YouTube pages identified above, or to take any of the steps demanded by Plaintiffs to cure the overall breaches of the Settlement Agreements and violations of the Judgment, and have specifically refused to make payments in connection with the liquidated damages provisions and the attorney fee provisions for dealing with the breaches.

## COUNT I: BREACH OF SETTLEMENT AGREEMENTS

47.      Reed Elsevier repeats the allegations of paragraphs 1-46 above as if fully set forth herein.

48.      The website of KFR, at the "vandalspage" noted above, as it existed from at least December 14, 2009 to at least February 5, 2010, reflects that KFR and Vandals continued to have and to use materials carrying the VARIETY Marks and the graphics for VARIETY Marks as depicted on the "Hollywood Potato Chip" in breach of ¶¶ 4.3, 4.4, 4.5, 4.6 and 4.9 of the KFR/Vandals Settlement Agreement, and in breach of ¶¶ 4.3, 4.4, 4.5, and 4.7 of the Freese Settlement Agreement.

49.      The website of KFR, at the "vandalspage" noted above, as it existed from at least December 14, 2009 to at least February 5, 2010, reflects, upon information and belief, that KFR and Vandals did not alter or destroy all products or materials within their control that were using the graphics for the VARIETY Marks in breach of ¶ 4.6 of the KFR/Vandals Settlement Agreement and in breach of ¶4.7 of the Freese Settlement Agreement.

50.      The website of Vandals, at www.vandals.com as it existed from at least December 14, 2009 to at least February 5, 2010, included a direct link to the Interpunk, Inc. website and Interpunk's offering for sale of the "Hollywood Potato Chip" album/CD using the VARIETY Marks and the graphics for the VARIETY Marks, thereby promoting for sale, in commerce, materials carrying the VARIETY Marks and graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip"" album/CD in breach of ¶ 4.3 of the Settlement Agreements, as well as ¶4.9 of the KFR/Vandals Settlement Agreement and paragraph 4.7 of the Freese Settlement Agreement.

51.      Upon information and belief, KFR and Vandals supplied subsequent to December 14, 2004 products or materials to other distributors, including online MP3 music retailers, bearing Reed Elsevier's VARIETY Marks and/or the graphics for the VARIETY Marks, in breach of ¶4.3 of each of the Settlement Agreements, as well as

¶¶4.8 and 4.9 of the KFR/Vandals Settlement Agreement and ¶¶4.7 of the Freese

Settlement Agreement.

52.     On information and belief, KFR and Vandals have failed to send

replacement graphics to other online music retailers, such as iTunes and Amazon.com,

who continue to display graphics for the "Hollywood Potato Chip" album/CD, in

association with the offered MP3 downloads, images of the album cover containing

original graphics, in violation of ¶4.7 of the KFR/Vandals Settlement Agreement and

¶4.6 of the Freese Settlement Agreement.

53.     The MySpace page for "The Vandals"

(http://www.myspace.com/thevandals), accessible through www.joeescalante.com,

www.kungfurecords.com and www.vandals.com web sites and the My Space page for

KFR (http://www.myspace.com/kungfurecords) reflects that KFR and Vandals continue

to possess, use, offer for sale and/or promote for sale, in commerce, materials carrying

the VARIETY Marks and graphics for the VARIETY Marks as depicted on the

"Hollywood Potato Chip" album/CD, in breach of ¶¶ 4.3, 4.4, 4.5, 4.6 and 4.9 of the

KFR/Vandals Settlement Agreement, and in breach of ¶¶ 4.3, 4.4, 4.5, and 4.7 of the

Freese Settlement Agreement.

54.     The posting by KFR and Vandals of videos on YouTube from the

"Hollywood Potato Chip" album/CD starting at least as early as February 2009, using an

image of the album cover containing original graphics enjoined under the Judgment and

precluded by the Settlement Agreements, reflects that KFR and Vandals continue to

possess, use, and/or promote, in commerce, materials carrying the VARIETY Marks and

graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip"

album/CD, in breach of ¶¶ 4.3, 4.4, 4.5, 4.6 and 4.9 of the KFR/Vandals Settlement

Agreement, and in breach of ¶¶ 4.3, 4.4, 4.5, and 4.7 of the Freese Settlement Agreement.

55.     By retaining products or promotional materials, including website pages

within their control carrying the VARIETY Marks and original graphics for the

"Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CD after December 10, 2004. KFR and Vandals also have breached ¶ 4.2 of the Settlement Agreements and have given false declarations under ¶4.6 of the KFR/Vandals Settlement Agreement and ¶4.5 of the Freese Settlement Agreement.

56.     All of the above activities of KFR and Vandals in breach of the terms of the Settlement Agreements are considered material.

### COUNT II:  VIOLATION OF JUDGMENT

57.     Reed Elsevier repeats the allegations of paragraphs 1-44 above as if fully set forth herein.

58.     The website of KFR, at the "vandalspage" noted above, as it existed in at least December 14, 2009 through at least February 5, 2010, reflects that KFR and Vandals continued to continue to possess, use, offer for sale and/or promote for sale, in commerce, materials carrying the VARIETY Marks and graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip"" and the "Gone With The Wind" of Punk Rock Samplers album/CD, contrary to the proscriptions of the Judgment at ¶14 and ¶17 (which Judgment does not apply to Josh Freese).

59.     The website of KFR, at the "vandalspage" noted above, as it existed in at least December 14, 2009 through at least February 5, 2010, reflects, on information and belief, that KFR and Vandals did not alter or destroy all products or materials within their control using the graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip" and "Gone With the Wind" of Punk Rock Samplers album/CDs in direct violation of ¶18 of the Judgment (which does not apply to Josh Freese).

60.     The website of "The Vandals" at (www.vandals.com) as it existed in at least December 14, 2009 through at least February 5, 2010, included a direct link to the Interpunk, Inc. website and Interpunk's offering for sale of the "Hollywood Potato Chip" album/CD using the VARIETY Marks and the graphics for the VARIETY Marks, thereby promoting for sale, in commerce, materials carrying the VARIETY Marks and

graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip""" album/CD contrary to the proscriptions of the Judgment at ¶17 (which Judgment does not apply to Josh Freese).

61.    On information and belief, KFR and Vandals supplied subsequent to December 14, 2004, products and materials to other distributors, including online MP3 music retailers, enjoined graphics and materials in violation of ¶17 of the Judgment (which does not apply to Josh Freese).

62.    The MySpace page for "The Vandals" (http://www.myspace.com/thevandals), accessible as of the date of the filing of this Complaint, through www.joeescalante.com, www.kungfurecords.com and www.vandals.com web sites and the My Space page for KFR (http://www.myspace.com/kungfurecords), reflects that KFR and Vandals continue to possess, use, offer for sale and/or promote for sale, in commerce, materials carrying the VARIETY Marks and graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip" album/CD, contrary to the proscriptions of the Judgment at ¶¶14 and 17 (which Judgment does not apply to Josh Freese).

63.    The use of materials carrying the VARIETY Marks and graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip" album/CD on the MySpace page for "The Vandals" noted above reflects, on information and belief, that KFR and Vandals did not alter or destroy all products or materials within their control using the graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip" and "Gone With the Wind" of Punk Rock Samplers album/CDs in direct violation of ¶18 of the Judgment (which does not apply to Josh Freese).

64.    The posting by KFR and Vandals of videos on YouTube from the "Hollywood Potato Chip" album/CD starting at least as early as February 2009, using an image of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements, reflects that KFR and Vandals continue to

possess, use, and/or promote, in commerce, materials carrying the VARIETY Marks and graphics for the VARIETY Marks as depicted on the "Hollywood Potato Chip" album/CD, in direct violation of ¶17 of the Judgment (which does not apply to Josh Freese).

65.     The posting by KFR and Vandals of videos on YouTube from the "Hollywood Potato Chip" album/CD starting at least as early as February 2009, using an image of the album cover containing original graphics enjoined under the Judgment and precluded by the Settlement Agreements, reflects that KFR and Vandals did not alter or destroy all products or materials within their control using the graphics of the VARIETY Marks, in direct violation of ¶18 of the Judgment (which does not apply to Josh Freese).

66.     The uses by Defendants, noted above, of products or promotional materials after December 10, 2004, on website pages within their control carrying the VARIETY Marks and graphics for the VARIETY Marks enjoined under the Judgments, and their continued possession of such materials, is in direct contradiction to the declaration provided by the Escalante/Vandals Affidavits, that compliance had been made with the Judgment, which declaration was provided in accordance with ¶19 of the Judgment.

67.     While Josh Freese was not a named party to the Judgment, he was fully aware of the impending entry of such Judgment when he executed the Settlement Agreement on December 3, 2004.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that:

(a)     KFR and Vandals pay Reed Elsevier fifty thousand dollars ($50,000) for the liquidated damages for past and continuing violations of the terms of the Judgment and/or for breaches of the Freese Settlement Agreement;

(b) KFR and Vandals pay Reed Elsevier's attorneys' fees and expenses in pursuing the violations of the Judgment and breaches of the Settlement Agreements as

dictated by the Settlement Agreements in an amount to be determined that will exceed $25,000;

(c)    KFR and Vandals identify all known current distributors of the "Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CDs utilizing the original graphics for those albums/CDs, and the current inventories of such distributors of these albums/CDs, and all authorized distributors/retailers of MP3 downloads of songs from the "Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CDs;

(d)    KFR and Vandals send to all known distributors letters revised labels (consistent with that currently appearing on the "vandalspage" for the "Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CDs having the original graphics, or to have those albums/CDs appropriately masked;

(e)    KFR and Vandals send revised images for album covers of the "Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CDs, that are consistent with the revised image on the "vandals page" to all authorized vendors of MP3 downloads from such albums/CDs with appropriate instructions to substitute the revised graphics as a condition to their continued authorization to sell the downloads;

(f)    KFR and Vandals edit all remaining websites within their control to drop depictions of any "Hollywood Potato Chip" and "Gone With The Wind" of Punk Rock Samplers albums/CDs carrying the original graphics for such albums/CDs;

(g)    KFR and Vandals drop all links from all websites within their control that take users to any distributor, wholesaler or retailer websites that are carrying inventory of "Hollywood Potato Chip" and/or "Gone With The Wind" of Punk Rock Samplers albums/CDs carrying the original graphics for such albums/CDs;

(h)    KFR and Vandals deliver-up to Reed Elsevier all inventory of "Hollywood Potato Chip" and/or "Gone With The Wind" of Punk Rock Samplers albums/CDs in their

possession or within their control which, as of February 5, 2010, continued to carry the original graphics for such albums/CDs (KFR and Vandals shall not be permitted to now place labels on such albums/CDs to mask the infringing marks and graphics)

       (i)      Reed Elsevier recover exemplary damages;

       (j)      An accounting be directed to determine KFR's and Vandals' profits resulting from their activities and that such profits be paid over to Reed Elsevier, and increased as the Court finds just under the circumstances of the case;

       (k)      Reed Elsevier recover the costs of this action, and pre-judgment and post-judgment interest; and

       (l)      Reed Elsevier recover such other relief as the Court may deem appropriate.

BOUCHARD MARGULES &
FRIEDLANDER, P.A.

David Margules (Bar No. 2254)
James J. Merkins, Jr. (Bar No. 4437)
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
Phone: 302-573-3500
dmargules@bmf-law.com
jmerkins@bmf-law.com
*Attorneys for Plaintiffs*

OF COUNSEL

FULBRIGHT & JAWORSKI L.L.P.
J. Paul Williamson
Tara M. Vold
801 Pennsylvania Avenue, NW
Washington, DC 20004-2623
Phone: 202-662-0200
Fax: 202-662-4643

Dated: March 24, 2010